Melvin A. **FIEL,** Sr., Plaintiff,

v.

**VIRGINIA EMPLOYMENT COMMISSION,**
Defendant.

**Civ. Action No. 94–0796–R.**

United States District Court,
W.D. Virginia, Roanoke Division.

Nov. 3, 1995.

---

Melvin Andrew Fiel, Sr., Roanoke, VA, pro se.

Neil Anthony Gordon McPhie, Catherine Currin Hammond, Pamela Finley Boston, Office of the Attorney General, Richmond, VA, for Virginia Employment Commission.

## MEMORANDUM OPINION

TURK, District Judge.

Melvin A. Fiel, Sr., proceeding *pro se*, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that his employer, the Virginia Employment Commission ("VEC") discriminated against him because of his race and national origin. The VEC filed a motion for summary judgment, and arguments on the motion were heard by the court on October 30, 1995. After a review of the evidence and arguments presented by both parties, the court is of the opinion that the defendant is entitled to summary judgment at this time. An appropriate order will be entered this day.

### I.

Fiel is an American citizen born in the Commonwealth of Virginia. His father was Filipino and his mother was Spanish. Fiel is currently employed at the VEC as an Employment Security Interviewer in the Roanoke Job Service Office. He has been in this position since February 1, 1994.

Fiel was initially hired by the VEC in July 1977 as a Manpower Services Coordinator. He received promotions in September 1977 and again in 1979. In 1983, all employees of Fiel's employment status with the VEC were subject to reduction in force layoffs; Fiel's position was eliminated. Fiel remained with the VEC, but was demoted from a Grade 13 supervisor position to a Grade 12 employment office manager position. At the same time, Fiel was transferred from VEC's Roanoke office to the agency's Radford office. Slight changes in Fiel's job status and compensation status were made over the next eight or nine years.

In July 1992, the Human Resources Director at the VEC received a sexual harassment complaint against Fiel from a woman working in the Radford Job Service Office. The VEC immediately transferred both employees to different offices. Fiel was temporarily transferred to an office in Galax, Virginia.

During an investigation of the sexual harassment charges, the VEC charged Fiel with several other violations of the agency's standards of conduct and performance. Fiel was placed on leave without pay on August 26, 1992. He filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) on August 31, alleging that the company's decision to transfer him to Galax was made because of his race and national origin. On September 3, 1992, Fiel received three written notices from the VEC charging him with various violations of agency rules. On this same date, he was notified that the VEC had decided to discharge him.

Fiel responded to the agency's decision to dismiss him by initiating state grievance procedures. As a result, one of the notices of the alleged violations was rescinded, while the other two notices proceeded through the grievance procedure and were scheduled for a hearing on February 16, 1993. The day of the hearing, the parties came to a settlement agreement which allowed Fiel to return to his employment with the VEC under certain stipulated conditions. Fiel agreed to be demoted to the position of Employment Security Officer. He understood that this position

would result in a reduction in pay. Fiel also agreed that he would be placed in the Buena Vista, Lynchburg, or Covington office, and that he would *not* be allowed to serve in either the Radford or Roanoke office. He further agreed to drop his EEOC complaint against the agency, and to reimburse certain funds that were at issue in the VEC's charges against him.

On February 19, 1993—before he had returned to work—Fiel sent a letter to the VEC requesting a transfer to the Roanoke office because his wife had recently been diagnosed with cancer. Fiel was reinstated as an interviewer at the VEC's Lynchburg office on March 1, 1993. On March 3, 1993, the Commissioner of the VEC sent a letter to Fiel informing him that the agency would not alter the settlement agreement.

Fiel also filed a second EEOC charge on February 20, 1993, alleging that his discharge on September 3, 1992 was a result of discrimination against him because of his race and national origin. A month later, Fiel requested that this charge be withdrawn.

Fiel continued to make requests for transfer to the Roanoke office. On September 22, 1993, he asked to fill a vacant apprenticeship position. He was informed that he could not laterally transfer to this position because it was a higher-level position than he was qualified to take. In response to this decision, Fiel filed another charge with the EEOC, this time charging that the VEC had demoted him and had denied him a transfer because of his race and national origin. In December 1993, while the EEOC investigation was ongoing, Fiel submitted two other transfer requests.

Finally, on February 1, 1994, Fiel was moved to the Roanoke office. The EEOC released its findings from the investigation of Fiel's charges in June 1994, with a determination that there was no evidence to support the claim. In spite of these developments, Fiel filed this lawsuit on September 15, 1994.

Fiel continues to complain that the VEC has discriminated against him because of his race and national origin. He says that the agency's decision not to transfer him to the Roanoke office was made with a discrimina-

tory intent. The VEC counters in its motion for summary judgment that Fiel has shown no evidence of a discriminatory intent, and that he was bound by the terms of his settlement agreement to work in the Lynchburg office. The VEC goes further to rebut Fiel's allegations by providing a legitimate, non-discriminatory reason for denying Fiel's requests for transfer. Specifically, the agency presents evidence that at the time Fiel made his requests, there were no positions available in the Roanoke office.

## II.

Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is generally disfavored for claims of employment discrimination where issues of intent are involved. *See Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir.1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.1990). This does not mean, however, that summary judgment is never appropriate in Title VII cases. General principles of summary judgment apply in Title VII cases except where the evidence presents a genuine issue of intent to discriminate. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985) (citing *International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir.1981)). On a motion for summary judgment, the party who will carry the burden of proof at trial must be able to show that there exists a genuine issue of material fact as to every element of his claim. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11 (summary judgment appropriate where evidence insufficient to present question to a jury) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The summary judgment mechanism is used to scrutinize the plaintiff's case to determine whether the plaintiff "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993). In determining whether

a genuine issue of material fact has been raised, the court must construe all inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

## III.

■ The Supreme Court established how the burden of production would be allocated and how parties would present their evidence in Title VII cases in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). According to the *McDonnell Douglas* scheme, the plaintiff has the initial burden of establishing a prima facie case of employment discrimination. The traditional formulation for cases involving race and national origin requires the plaintiff to show that (1) he is a member of a racial or ethnic minority; (2) he applied and was qualified for a position for which the employer was seeking applicants; (3) in spite of his qualifications, he was denied the position; and (4) after the plaintiff was rejected, the employer continued to seek applicants who had the plaintiff's qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. As the Court recognized, however, the specifications for prima facie proof may vary according to the factual circumstances in each case. *Id.,* n. 13; *see, e.g. Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985) (modifying test for claim of retaliation). The primary objective for stating a prima facie case under Title VII is for the plaintiff to provide some objective evidence of a connection between race and the adverse employment action. *Autry v. N.C. Dept. of Human Resources,* 820 F.2d 1384, 1386 (4th Cir.1987) ("Plaintiff would have to be able to show a connection between her race and [the adverse employment decision].... In other words, she would have to show that she was [denied employment benefit] because of her race, not that she was a member of [a racial minority] and was not [given an employment benefit].").

■ Once the plaintiff has established a prima facie claim, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the actions affecting the plaintiff. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

The plaintiff must then be afforded an opportunity to show that the proffered reason is a sham, and that the real motivation behind the decision was a discriminatory intent. *Id.* at 804, 93 S.Ct. at 1825. The plaintiff always carries the ultimate burden of persuading the trier of fact that the employer discriminated. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). Title VII provides for an award of damages only against an employer who is proven to have taken an adverse employment action by reason of (in this case) race or national origin. *Id.* at 523–25, 113 S.Ct. at 2756 ("That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct.").

■ To make out a prima facie case in the present matter, the plaintiff must show that (1) he is a member of a racial or ethnic minority; (2) he applied for and qualified for a transfer to the Roanoke VEC office; (3) he was denied the transfer; and (4) the transfer for which he had applied was granted to someone who was not a member of a racial or ethnic minority. Fiel clearly fails to meet these requirements. He cannot show that there was a position available in the Roanoke office of the VEC for which he was qualified but rejected. In fact, even if a position had become available for which the plaintiff had the necessary professional skills, Fiel had declared himself ineligible for any position in the Roanoke office by virtue of the settlement agreement signed in February 1993. Essentially, the plaintiff has not shown an adverse employment action.

Fiel is also unable to demonstrate that he was treated differently than other employees because of his race and ethnic origin. He argues that he had a legitimate reason for requesting a transfer to Roanoke because his wife was undergoing treatment for cancer. He attempts to compare himself with other VEC employees who received transfers for purportedly lesser reasons. As the defendant points out, however, the comparison is irrelevant in light of the agreement between Fiel and the VEC. Fiel cannot show that any other employees of the VEC were sub-

ject to the same restrictions that he had agreed would be part of his employment conditions. Nothing in the agreement itself or in the circumstances surrounding the parties' negotiations suggests that Fiel should not be bound by the terms of that document. The existence of the settlement agreement negates any suggestion that the plaintiff was treated differently than other employees because of his race and national origin.

■ In spite of the plaintiff's inability to set forth a prima facie case of discrimination, the defendant has articulated legitimate, non-discriminatory reasons for its decision not to transfer the plaintiff to its Roanoke office before February 1, 1994. Foremost among these reasons is the VEC's judgment that it should abide by the terms of the settlement agreement until the plaintiff had demonstrated satisfactory job performance in his new position. The plaintiff's first evaluation as an interviewer rated his performance as "meets expectations." Shortly thereafter, the plaintiff was granted his request to be transferred to the Roanoke office.

The VEC also offers evidence to show that during 1993 when the plaintiff was making his transfer requests, the Roanoke office had no positions available for him. The Director of Human Resources for the agency stated in her affidavit that the only position that might have been available to the plaintiff during 1993 was moved from the Roanoke office to the Radford office, where it was filled. She also reviewed the records of VEC employees who were given transfers during 1993, and found that each had a satisfactory performance record, and that they were each transferred to positions that had become vacant in other job offices. The plaintiff offers no evidence to rebut the defendant's assertions or its documentation of these facts.

The plaintiff has failed to show that a genuine issue of fact exists that would be relevant to his claim of discrimination. The defendant is therefore entitled to judgment as a matter of law.