**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT H. CAMPBELL,
<u>Plaintiff-Appellant,</u>

v.

No. 96-1638

SANDOZ PHARMACEUTICALS
CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-95-883-A)

Submitted: June 24, 1997

Decided: July 28, 1997

Before HALL and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Sol Z. Rosen, Washington, D.C., for Appellant. Peter O. Hughes,
STANTON, HUGHES, DIANA & ZUCKER, P.C., Florham Park,
New Jersey; Stephen W. Robinson, Karen T. McWilliams,
MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., McLean, Vir-
ginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert H. Campbell appeals the district court's grant of summary judgment in favor of the Defendant on his 42 U.S.C.§ 1981 (1994), claim alleging racial discrimination. We affirm.

From 1988 to 1993, Campbell was employed by the Defendant pharmaceutical corporation as a Military Hospital Representative (MHR). Campbell, the only African American male holding such a position, was assigned to the Washington, D.C., area where he was responsible for accounts at ten military hospitals. In 1993, the manager of Defendant's Military Hospital Division (MHD) convinced his superiors to limit the number of military bases for which an MHR was responsible to no more than five per MHR. As a result, all of the MHR's, including Campbell, lost accounts. Most of the remaining accounts were assigned to other sales divisions of the company, but given the high concentration of military personnel and retirees, and hence military accounts, in the D.C. area, the company deemed that this area merited the attention of two MHR's. The second individual hired to service half of Campbell's previous area was a white male. Although this individual assumed responsibility for one of the three major hospitals in the area, Campbell was still given the responsibility of servicing the remaining two.

In 1994, the Defendant corporation underwent a national reorganization in which it completely restructured the manner in which it marketed its product. Pursuant to this reorganization, the marketing structure was divided into six regions around the country and the MHD, along with other "specialty" sales forces, was eliminated along with all MHR positions. All previous MHR's, including Campbell, were offered positions in the new regions. These offers required the Defendant to terminate the employment of many regular sales representatives. As a result of the reorganization and simultaneous down-

2

sizing, approximately 140 employees were terminated and another 137 were demoted.

Shortly after the reorganization, the regional managers in charge of the Southeastern Region determined that one representative would service all major military accounts in the D.C. area. Based upon performance evaluations, the managers chose the same white male who had previously been assigned half of Campbell's D.C. accounts. Meanwhile, Campbell was forced to accept a lower position as a Territory Representative if he wished to remain in the company.[1]

As a result of these actions, Campbell filed an employment discrimination claim against the company alleging that both the 1993 and 1994 actions constituted racial discrimination in violation of 42 U.S.C. § 1981. The district court granted summary judgment in favor of the Defendant. On appeal, Campbell argues that because he was the only African-American MHR, and because he was displaced by both actions, the restructuring and reorganization had a disparate impact on him on account of his race. He also argues that the fact that several white employees lost their positions as well was a subterfuge to disguise the ultimate goal of the Defendant company, which was to replace him with a white employee. Thus, he appears to be advancing both a disparate treatment theory and a disparate impact theory.

We begin by noting, as did the district court, that the framework necessary to establish a claim of discrimination via the disparate impact theory underscores the inappropriateness of an application of that theory to a situation in which only one individual of a protected class is affected by a given employment practice. Simply put, the fact that one individual among several affected by an employment decision happened to fall into a protected class is not of sufficient statistical significance to establish a prima facie case of race discrimination under a disparate impact theory.

We thus turn to the question of whether Campbell has demonstrated racial discrimination via a disparate treatment theory and

_____

[1] In order to create this position for Campbell, the company discharged a white employee with a higher performance rating, but with apparently less seniority.

3

determine that he has not. The district court relied on <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310 (4th Cir. 1993), **2** in its determination that Campbell could not prevail under a theory of disparate treatment. Under <u>Mitchell</u>, a plaintiff must establish that: (1) he is in a protected class; (2) he was selected for demotion or reassignment from a larger group of candidates; (3) he was performing at a level equivalent to the lowest level of those retained; and (4) the process of selection produced a residual work force containing some unprotected persons who were performing at a level lower than that at which he performed. <u>Id.</u> at 1315.

As to the 1993 action, Campbell alleges that use of the <u>Mitchell</u> test is inappropriate as <u>Mitchell</u> is a reduction in workforce case while the 1993 action was a division of territories. Even assuming the validity of this argument, we note that regardless of what prima facie test is proper for the employment action at issue, Campbell is unable to demonstrate that the Defendant's legitimate, non-discriminatory reason for the action--a desire to reduce MHR responsibility with the aim of increasing effectiveness--was pretextual. <u>See McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) (establishing burden-shifting scheme in employment discrimination actions). Accordingly, we affirm the grant of summary judgment as it applies to the 1993 division of territories.

Turning to the 1994 reorganization and reduction in workforce, which resulted in Campbell's demotion, we agree with the district court that Campbell is unable to establish his prima facie case under <u>Mitchell</u> because he cannot demonstrate that he was at least as qualified as the white employee allowed to continue servicing military accounts.**3** Accordingly, we affirm the district court's grant of summary judgment in favor of the Defendant.

_____

**2** Although <u>Mitchell</u> involves a claim under the Age Discrimination in Employment Act, the application of its established prima facie case to a claim of race discrimination presents no impropriety.

**3** Campbell also argues that the use of performance ratings to determine his qualifications relevant to the aforementioned white employees is improper because these performance ratings are both artificial and a reflection of the bias and prejudice of the supervising officer who pre-

4

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

pared them. In support of this argument, he cites Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). We note that in Price-Waterhouse the plaintiff was denied promotion based upon evaluations which contained clear statements of sexual bias. Such is not the case in Campbell's evaluations. Rather, Campbell's evaluations were based solely on his ability to obtain formulary approval of the Defendant's pharmaceuticals. While obtaining formulary approval may hinge upon a variety of factors as Campbell claims, there is no showing that it hinges upon a representative's race. Further, Campbell himself stated in deposition that the manager responsible for his evaluation, the individual also responsible for his hire, never evidenced any racial discrimination against him. Accordingly, we find this argument to be unconvincing.

5