UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VENKAT C. REDDY,
Plaintiff-Appellant,

v.                                                                          No. 97-1053

BDM FEDERAL, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-95-3906-L)

Submitted: March 31, 1998

Decided: May 15, 1998

Before LUTTIG and MICHAEL, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Shelton H. Skolnick, SKOLNICK & LEISHMAN, P.C., Derwood,
Maryland, for Appellant. Michael F. Marino, Eric A. Welter, REED,
SMITH, SHAW & MCCLAY, McLean, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant Venkat C. Reddy, an Indian male, was employed as a Senior Staff Member at BDM Federal, Inc. ("BDM"). He was discharged in November 1993 as part of a reorganization and reduction in force. Alleging that race was a determining factor for his discharge, Reddy sued BDM under Title VII.[1] The district court granted BDM's motion for summary judgment, concluding that Reddy failed to assert a prima facie case of discriminatory discharge and that he failed to refute BDM's legitimate, nondiscriminatory explanation for his discharge. The court relied primarily on the fact that Reddy had provided no evidence that his work level was substantially equivalent to the lowest level of the group of employees who were retained, or that the residual group included persons performing at a level below his.

After a review of the entire record before the district court on summary judgment, we agree that Reddy failed to state a prima facie case of race discrimination under Title VII. We therefore affirm the district court's grant of summary judgment to BDM.

Reddy began his work for BDM in March 1991 as support for a contract (the EM-40) between BDM and the Department of Energy ("DOE"). In November 1992, the DOE terminated the EM-40 contract with BDM. Reddy was reassigned to a different contract (the EM-30) and to a different supervisor. Although Reddy's performance evaluations from 1991 through 1993 stated that his work was acceptable and that he had excellent technical skills and field experience, his overall performance ratings fluctuated from "acceptable" in 1991, to "good" in 1992, to "marginally acceptable" in 1993. Each evaluation emphasized Reddy's need to improve his oral communication skills and directed that he take specific action to improve these skills. Reddy admitted that he never inquired about or enrolled in an oral communications course.

In addition to his weak communication skills, Reddy had perfor-

_____

[1] **See** 42 U.S.C. §§ 2000e-2, 2000e-5 (1994).

mance problems in the EM-30 work group. Reddy was not an engineer and had no hands-on construction experience, so the group manager for the EM-30 contract had difficulty finding assignments for Reddy.[2] Further, Reddy's performance evaluations and comments from his supervisors reflected difficulties in meeting client expectations and following project procedures. At the time of his discharge, Reddy's work performance had declined to such a point that he was being assigned administrative tasks normally performed by high school summer interns.

In October 1993 the DOE notified BDM of its proposed changes in funding the EM-30 contract. These changes required a reduction of approximately one-third of the EM-30 workforce. In Reddy's November 1993 discharge letter, BDM cited these cutbacks as the reason for his discharge.[3] Of the four employees discharged at this time, Reddy was the only member of a protected class.

Summary judgment is appropriate when there is no genuine issue of material fact given the parties' burdens of proof at trial.[4] In determining whether there is a genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. [5] The appellate court reviews a grant of summary judgment de novo. [6]

To establish a prima facie case of unlawful race discrimination in a reduction-in-force termination under Title VII, a plaintiff must show

_____

[2] After the cutbacks which precipitated Reddy's termination, the EM-30 work group's assignments required engineering skills which Reddy did not possess.

[3] After Reddy received his reduction-in-force notice, his immediate supervisor circulated Reddy's resume within BDM and to two outside companies, but was unable to locate another position for which Reddy was qualified.

[4] See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

[5] See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

[6] See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).

3

that: (1) he was a member of a protected group; (2) he was selected for discharge from a larger group; (3) he was performing at a level substantially equivalent to the lowest level of that in the group retained; and (4) the process of selection produced a residual work force that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing.[7] Once the plaintiff sets forth a prima facie case of discrimination, the burden of articulating a legitimate, nondiscriminatory explanation for the adverse employment decision shifts to the defendant. [8] If the defendant meets this burden, then the presumption of discrimination drops from the case, leaving the plaintiff with the ultimate burden of proving that the defendant intentionally discriminated against him.[9]

Reddy has not produced any evidence aimed at the third and fourth elements of the Mitchell test. He conducted no discovery of the performance evaluations of those employees in the EM-30 contract residual group and admits that he has no personal knowledge of these facts. Reddy argues that his performance was adequate and there was no written documentation of complaints about his performance, so his termination must have been due to his race. Because Reddy has not shown that any non-protected employees performing at or below his level were retained, he has not stated a prima facie case.

Finally, even if Reddy established a prima facie case, we conclude that he failed to meet his burden of producing evidence to show that BDM's reason for terminating him was pretextual. BDM had to terminate a large part of its work force due to the DOE-mandated reductions. Reddy's performance evaluations reflected difficulties in his

_____

[7] **See Mitchell v. Data Gen. Corp.** , 12 F.3d 1310, 1315 (4th Cir. 1993). Although Mitchell involves a claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C.A. § 621-634 (West 1985 & Supp. 1997), the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), is equally applicable--and in fact originated--in the context of Title VII cases involving claims of racial discrimination in employment. See McDonnell Douglas, 411 U.S. at 802-05; see also Duke v. Uniroyal, Inc., 928 F.2d 1413, 1418 (4th Cir. 1991).
[8] **See Mitchell**, 12 F.3d at 1314-15.
[9] **See St. Mary's Honor Ctr. v. Hicks**, 509 U.S. 502, 511 (1993).

performance, and he did not have the engineering skills necessary to remain on the EM-30 project. Because Reddy failed to come forth with evidence to contradict the reason given for his termination, he has not established that BDM's reason for terminating him was pretextual.

We find that no genuine issue of material fact exists as to Reddy's Title VII claim; therefore, we affirm the district court's order granting summary judgment to BDM. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5