Arthur THACKER, Plaintiff,

v.

BRADY SERVICES, INC., Defendant.

No. 1:03CV01160.

United States District Court, M.D. North Carolina.

March 2, 2005.

Arthur Thacker, Greensboro, NC, pro se.

Kenneth R. Keller, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHARP, United States Magistrate Judge.

In this civil action, Plaintiff Arthur Thacker, proceeding *pro se*, alleges that his former employer, Brady Services, Inc. ("BSI"), terminated him in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Specifically, Plaintiff Thacker alleges that he was fired in retaliation for his complaint to management concerning racial language used by one or more of his co-workers. After the complaint and answer were filed, the Court established a period of discovery in which the parties were free to make discovery, using the procedures established by the Federal Rules of Civil Procedure. Following the close of discovery, Defendant BSI

moved for summary judgment on all of Plaintiff's claims. The parties have fully briefed their positions, and the summary judgment motion is ready for a ruling.[1]

### Procedural History

Plaintiff Thacker filed the complaint initiating this action on December 9, 2003. The *pro se* complaint can be read to raise several Title VII claims arising out of Plaintiff's employment with BSI. Mr. Thacker, an African–American, alleges that BSI followed a policy and practice of discriminating against him on account of his race in matters of discipline and job assignments. His principal claim, however, is one of retaliation: He asserts that BSI terminated him in retaliation for his complaint to management concerning derogatory racial language in the workplace. For relief, Plaintiff seeks injunctive relief and compensatory and punitive damages.

■ While the *pro se* complaint states, on its face, claims of both terms-and-conditions discrimination and retaliation, only the retaliation claim is properly before the Court. Mr. Thacker, in the week following his termination by BSI, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Therein, he cited only "retaliation" as the basis for his charge against BSI. (Pleading No. 21, Def.'s Br. in Supp. of Mot. for Summ. J., App. 1–G, Charge of Discrimination, BSI 014.) On the "Charge of Discrimination" form, Mr. Thacker did not check the box which indicated a charge of discrimination based on race or color; he checked only the box which indicated "retaliation." Indeed, his claim summary in the Charge of Discrimination raises only an issue of retaliation. That summary reads in full:

1. The parties have consented in writing to the trial jurisdiction of the United States Magistrate Judge, and the case has been referred to the undersigned for resolution. *See* 28 U.S.C. § 636(c).

I was hired by the above named company on August 29, 1998. During my employment I complained several times to management and the company President Jim Brady, about the racial disparate treatment and slurs towards Blacks. Most recently I complained to Mike Parker/General Manager on or about January or February 2003 about this prejudicial treatment of Blacks. I was discharged by Mike Parker on May 23, 2003.

I was told I was being discharged because of an incident where I pushed a co-worker while lodging at an off site work location. I am not disputing that I pushed my co-worker, but he was drunk and I did not know what he might do. I did not choke my co-worker as he alleged to the company. The company did not conduct an investigation and I believe I was discharged in retaliation because I am outspoken and had complained about race issues.

I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, based on retaliation.

*Id.*

 It is well settled that a plaintiff's EEOC charge limits the scope of a subsequent civil suit under Title VII. A Title VII plaintiff may advance only those claims in his judicial complaint which are reasonably related to the EEOC charge and could be expected to follow from a reasonable administrative investigation of the EEOC charge. *See Sloop v. Memorial Mission Hospital, Inc.,* 198 F.3d 147, 149 (4th Cir. 1999); and *Chisholm v. U.S. Postal Service,* 665 F.2d 482, 491 (4th Cir.1981). Here, Mr. Thacker's Charge of Discrimination raised only a retaliation claim, and there is no basis for finding that a reasonable investigation of the retaliation charge would have widened into a general investigation of alleged race discrimination at BSI. "Retaliation" is a discrete and focused allegation, and retaliation against an employee who opposes an alleged Title VII violation may be made out even when there is no evidence of the alleged underlying violation. Accordingly, the Court construes the complaint in this action to properly raise only a retaliation claim under Title VII.

### Plaintiff's Motion for an Extension of Discovery

 Plaintiff's motion to extend discovery (Pleading No. 23) is **DENIED**. Plaintiff argues that summary judgment is "premature" because he has not had an adequate opportunity for discovery and has not had time to obtain an affidavit from Michael Johnson, a former co-worker. BSI has submitted to the Court, however, its responses to the discovery served by Plaintiff during the discovery period, and the Court finds no discovery default by Defendant. Plaintiff has failed to file a motion to compel discovery, but in any event, the Court's own review of the discovery afforded by Defendant shows that BSI has not withheld relevant information that was properly requested by Plaintiff. In one instance, Plaintiff complains that BSI has not produced an "incident report from the Sleepy Inn Motel" that was requested by Plaintiff. BSI advises that it does not have possession of the report apparently generated internally by the motel, if any such report even exists. The federal rules do not require a party to produce what it does not possess or control. Also, Plaintiff wants more time to secure an affidavit, but a party to litigation may, of course, seek such an affidavit before, during, or after a court-ordered discovery period, and Plaintiff has not shown why he needs more time to do what he has been free to do during the last twenty months. For the above reasons, the Court concludes that Plaintiff has not shown

good cause for a discovery extension. *See* LR26.1(g). The Court now turns to Defendant's summary judgment motion.

### The Summary Judgment Standard of Review

■ A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party.

■ When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). A mere scintilla of evidence is insufficient to circumvent summary judg-

ment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id.* at 248–49, 106 S.Ct. 2505. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1315–16 (4th Cir.1993).

### Statement of Facts

On summary judgment review, the facts are viewed by the Court in a light most favorable to the party resisting summary judgment, Mr. Thacker in this case. The Court does not resolve material disputes of fact that are created by competent and admissible evidence. *See* Fed. R. Civil. P. 56(e).

Plaintiff Thacker's affidavit sets forth his version of the facts relating to his termination by BSI. (Pleading No. 23, Pl.'s Resp. to Def.'s Mot. for Summ. J., Arthur Thacker Aff.) Mr. Thacker opens the affidavit by requesting more time for discovery, saying, "I cannot present facts to justify opposition to defendant's [summary judgment] motion." *Id.* Despite this assertion, he proceeds to describe the events leading up to his May 23, 2003 termination.

Plaintiff says that in March 2002[2] Mike Parker, a BSI manager, called him into his office and said that he had heard Plaintiff was trying to raise some "racial issues" in the workplace. Plaintiff responded that he didn't like the use of the words "nigger work" and "black mammy" by co-workers.[3]

---

2. At page 1 of his affidavit, Plaintiff mistakenly identifies this date as "March 26, 2003." From Plaintiff's own deposition testimony, it is clear beyond controversy, however, that the actual date of Plaintiff's meeting with Mike Parker was March 26, *2002.* (Def.'s Br., App. 7, Arthur Thacker's Dep. at 20–22.)

3. The only evidence in the record concerning use of racial language is that such language was used occasionally by co-worker Larry Harley, an African–American. (Pl.'s Dep. at 32.)

According to Plaintiff, Parker said, "Well if you don't like the way things is, maybe you need to find another job." (Pl.'s Aff. at 2.) On that same day, Plaintiff talked to Jim Brady, President of BSI, about his complaint. After this discussion, Jim Brady and Mike Parker had a further meeting with Plaintiff. Plaintiff says that after this meeting he was not "confronted with the racial issue anymore," but that after the meeting he was told by Larry Harley, a co-worker, that he was going to get fired for going to Jim Brady and complaining of Mike Parker and the racial language. *Id.* at 3.

With regard to the incident in 2003 which resulted in his termination, Plaintiff says that he was rooming at a motel with Larry Harley during an off-site duty assignment. Plaintiff went to bed at 9:30 p.m. and went to sleep. Mr. Harley returned to the room after midnight and let the door slam behind him. He turned on the light. He opened the refrigerator door and slammed it shut. Plaintiff said to Harley, "Man, can't you keep it down a little bit?" *Id.* at 3–4. The two had an argument that ended with Harley walking toward Plaintiff and cussing. Plaintiff says, "I pushed him back with one open hand and said, 'Man, don't walk up on me.'" Mr. Harley did not fall from the push, and Plaintiff did not choke him. *Id.* at 5.

▮ Mr. Harley left the room. The next morning, the attendant at the front desk spoke to Plaintiff and told him that Harley had complained about Plaintiff assaulting him during the night. Plaintiff says the attendant told him that Harley didn't want to call the police because Brady had been trying to fire Plaintiff for two years.[4]

Plaintiff says that nothing happened concerning the incident until May 23 when he was called into a meeting with Larry Harley, Mike Parker, and Debbie Longo (BSI's Human Resources Director). Mr. Harley gave his version of the incident, and Plaintiff gave his. Plaintiff was fired on the spot. Plaintiff says that "I brought this action because I was wrongfully terminated for an assault that never took place." *Id.* at 6.

Mr. Thacker states that during the discovery period he tried to get information from the desk attendant at the Sleepy Inn Motel but was told she had written an internal report and could not give Plaintiff a copy. Plaintiff has sought this report from BSI. Plaintiff says he needs this report to show Larry Harley's behavior immediately after the alleged assault and to show that Harley said that BSI was trying to fire Plaintiff Thacker. Plaintiff says he needs time to obtain a copy of the report from the Sleepy Inn, and he also needs time to secure an affidavit from co-worker Michael Johnson. Plaintiff concludes that "Brady Services, Inc. terminated me based on the 'sole allegations' of Larry Harley. I was wrongfully terminated and from information and belief, it was due to the so called racial issue thing." *Id.* at 8.

Defendant's factual summary is consistent with Plaintiff's account in many respects. Defendant says that Mr. Thacker was terminated by BSI on May 23, 2003, for admitting to management during an investigation of a May 17, 2003 incident that he had initiated violence against a co-worker by using physical force against Larry Harley. Mr. Harley, according to Plaintiff's own admission to management, did not touch Plaintiff. (Def.'s Br., App. 1–C, Summ. of Meeting, BSI 003.) BSI has a written company policy which pro-

4. The attendant's out-of-court statement about what Mr. Harley supposedly said is double hearsay and is not admissible. *See* Fed. R. of Evid. 802.

hibits threatening or engaging in violence. (Def.'s Br., App. 1–A, Associate Handbook, BSI 001.)

Defendant's evidence, relying upon an affidavit of Mr. Harley, is that Plaintiff shoved Harley against a wall, hit him on his chest, pushed him on the bed, and choked him until he lost consciousness. (Pleading No. 19, Larry J. Harley Aff. ¶ 6.) (Of course, Plaintiff denies anything more than a push, and Plaintiff's evidence is accepted on summary judgment review.) Mr. Harley went to the hotel lobby where he telephoned two supervisors with BSI. Mr. Harley left messages with both managers stating that Plaintiff Thacker had attacked him. (Def.'s Br., App. 1–D, Documentation of Incident, Report, BSI 004; App. 1–E, Documentation of Incident, BSI 005.) Mr. Harley also filed a criminal complaint against Plaintiff for the assault.

Mike Parker began investigating Harley's report immediately after hearing of it on May 17. Mr. Parker and Debbie Longo met with Plaintiff and Larry Harley on May 23 to investigate the incident. During the meeting, Plaintiff Thacker admitted that he pushed Harley and that Harley did not engage in physical violence. (Def.'s Br., App. 1–C, Summary of Meeting, BSI 003.) After interviewing both men, Parker and Longo determined that Plaintiff had violated the company's policy against violence. Plaintiff Thacker was fired at the conclusion of the meeting.

With regard to Plaintiff Thacker's present allegation that his May 23, 2003 termination was in retaliation for his March 26, 2002 complaint to Mike Parker and Jim Brady concerning racial language in the workplace, Defendant presents additional factual showings. After the March 26, 2002 meeting, managers of BSI met with field personnel and emphasized an opposition to the use of racially charged language, even in jest. (Pleading No. 20, James E. Brady Aff. ¶ 4.) Plaintiff Thacker

confirmed in his deposition that no further problems occurred after that time concerning racial language. (Pl.'s Dep. at 33.)

*Discussion*

■ To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there was a causal link between the protected activity and the adverse action. *See Causey v. Balog,* 162 F.3d 795, 803 (4th Cir.1998). This Court assumes for purposes of this Order that Plaintiff's forecast of evidence is sufficient to show elements (1) and (2) of a prima facie case of retaliation. Nonetheless, it is clear, for reasons set forth below, that the admissible evidence in the summary judgment record fails to create a triable issue regarding element (3), a causal link between Plaintiff's March 2002 complaint and his May 2003 termination.

■ Approximately fourteen months passed between the time of Plaintiff's protected activity (his one-time complaint regarding racial language) and his termination. Proximity in time between a protected activity and an adverse action can, of course, give rise to an inference of retaliation, but an interval of fourteen months is far outside the range for such an inference. *See Causey,* 162 F.3d at 803 (a thirteen-month interval is too long to establish causation); and *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997)(four month time-lag between protected activity and termination not sufficient to justify an inference of causation). This is especially true where, as here, Plaintiff continued to receive increasing benefits such as regular pay raises for many months after the protected activity. (Pl.'s Dep. at 39.) Standing alone, the mere fact that Plain-

tiff complained to BSI management in March 2002 about racial language in the workplace and was fired fourteen months later in May 2003 is insufficient as a matter of law to create for the jury a triable issue of causation.

Plaintiff has offered no admissible evidence to support his claim that his termination was causally related to his protected activity. He says that Larry Harley told him in March 2002 that he was going to get fired for going to Jim Brady and complaining about racial language. This evidence is remote in time by over fourteen months from Plaintiff's eventual termination. Moreover, Mr. Harley was a non-management co-worker with Plaintiff. His alleged statement is not attributable to BSI and, equally to the point on summary judgment review, is inadmissible for failure to show any basis for personal knowledge on Harley's part of the intention of BSI's managers to fire Plaintiff.[5] *See* Fed. R. of Evid. 602.

Plaintiff also makes reference to a "Sleepy Inn Motel" report, a document, if it exists, that is not in the record before the Court since neither Plaintiff nor Defendant has possession of it. Plaintiff believes this document will show that Larry Harley told the desk attendant on the night of the incident between Plaintiff and Harley that BSI had been trying to fire Plaintiff for two years. Not only is there no evidence of this statement before the Court, but even if there were, such a purported out-of-court statement by Harley to a desk attendant would be inadmissible both as hearsay and as outside Harley's personal knowledge. Moreover, even if

considered, Harley's supposed "two-year" remark would date BSI's desire to fire Plaintiff to a time long *before* his March 2002 complaint, thus undermining any inference of the causation Plaintiff attempts to show.[6]

Finally, Plaintiff points to two alleged "comparables" in an attempt to raise an inference of retaliation in his termination He cites a 2000 incident between Fred Parker and Jamie Letts that he argues shows that whites were treated more favorably than blacks at BSI. But the only admissible evidence before the Court is that there was a physical altercation between Parker and Letts, who were both white males, and Letts was fired by BSI when it was determined that he was the aggressor. (Def.'s Br., App. 2, Debbie Longo Aff. ¶ 5, and Termination Notes, BSI 015.) This evidence is certainly of no help to Plaintiff.

Second, Plaintiff describes a 2000 altercation between Michael Johnson, a BSI employee who is white, and Larry Harley. While it is clear there was some use of physical force against Harley by Johnson, the only evidence before the Court is that Harley believed Johnson's use of force was the result of drunkenness and was not in anger. Therefore, Harley *did not report* the incident to BSI management. (Harley Aff. ¶ 3.) Accordingly, this incident can give rise to no inference of differential treatment by BSI.

Plaintiff has not forecast sufficient evidence of a causal relationship between his 2002 complaint and his 2003 termination. He has therefore failed to show a prima

---

5. The Court notes that Mr. Harley denies making this statement. (Harley Aff. ¶ 4.) Nonetheless, there is no occasion to resolve the dispute between Plaintiff and Harley since any such alleged statement by Harley would be inadmissible for lack of personal knowledge. Plaintiff says another co-worker, Jeff Shropshire, told Harley that Plaintiff was going to get fired, but this assertion is both hearsay and made without apparent personal knowledge.

6. There is evidence of job performance issues with Plaintiff that date back several years in time. (Pl.'s Dep. at 18–27.)

facie case of retaliation, and his claim must be dismissed.

██ Additionally, it is clear that even if a prima facie case by Plaintiff were assumed by the Court, Defendant BSI has proffered a legitimate reason for its termination of Plaintiff, and Plaintiff has shown nothing to raise an issue of pretext. *See generally Rishel v. Nationwide Mut. Ins. Co.*, 297 F.Supp.2d 854, 860 (M.D.N.C. 2003). BSI has shown by admissible evidence and documents contemporaneous to the events in question that:

(1) BSI has a written policy against violence or threatened violence;

(2) Mr. Thacker received a copy of this written policy before the events in question;

(3) Mr. Thacker admitted to Michael Parker and Debbie Longo, who were investigating the incident at the Sleepy Inn Motel, that he pushed Larry Harley during an altercation between the two during an off-site assignment, and he further admitted that Harley did not touch him;

(4) Documents kept contemporaneously by BSI show that Harley reported this incident to management as a serious assault, complained to police, and sought medical treatment.

(BSI 001, BSI 002, BSI 004, BSI 005, BSI 102–06, and BSI 109–10.) Defendant has thus shown a legitimate reason for its termination of Plaintiff. Plaintiff, as demonstrated in the discussion above, has shown nothing to raise a reasonable inference of pretext.

Ultimately, it appears to the Court, Plaintiff believes that BSI's managers were wrong in believing, on May 23, 2003, Larry Harley's version of the altercation between Plaintiff and Harley. Harley's version describes a more severe use of force by Plaintiff than does Plaintiff's version. This Court is not a forum, however, for determination of whether BSI managers were correct in their findings concerning the incident. Title VII does not call for such a review. Rather, what the Court is looking for is evidence of retaliation or wrongful motive, not evidence of a mistaken determination during a disciplinary investigation. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000)("[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.").

For all of the reasons set out above, the Court concludes that Plaintiff's claim of retaliatory termination in violation of Title VII does not survive Defendant's summary judgment motion.

### Conclusion

Accordingly, **IT IS ORDERED** that Plaintiff's motion for an extension of discovery (Pleading No. 23) is **DENIED**, and that Defendant's motion for summary judgment (Pleading No. 15) is **GRANTED**. A judgment dismissing this action with prejudice will be entered contemporaneously with this Memorandum Opinion and Order.