Stephanie K. DOYLE, Plaintiff,

v.

**SENTRY INSURANCE, a Mutual Company, Inc., Defendant.**

Civ. No. 3:94CV614.

United States District Court,
E.D. Virginia,
Richmond Division.

March 3, 1995.

Robert Patrick Geary, Richmond, VA, for plaintiff Stephanie K. Doyle.

Kirk David McQuiddy, Thomas Dudley Stokes, III, Ann Adams Webster, Morris and Morris, Richmond, VA, for defendant Sentry Ins., a Mut. Co., Inc.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff alleges that Defendant, in failing to promote her, discriminated against her on account of her sex in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff also asserts that she was discharged on account of her sex. Defendant has moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. For the reasons which follow, the Court will grant Defendant's motion.

### I.

Plaintiff commenced employment with Defendant as a claims representative in 1988. During the course of her employment, Plaintiff was promoted on two occasions. In 1989, she was promoted to claims adjuster, and, in 1990, was promoted to senior claims adjuster. In November, 1992, she applied and was selected to interview for an open management position as claims unit manager in De-

fendant's bodily injury section. Several other senior claims adjusters, including one male, James Carr, interviewed for the position as well. The interviews were conducted by claims manager Ray Walters subsequent to an initial applicant screen by human resources manager Bonnie Chappelle. Walters was responsible for the ultimate promotion decision (although Chappelle made recommendations as to whom she felt was the best person for the job) and eventually selected Carr for the position. Chappelle concurred with this decision. Both Walters and Chappelle agreed that the next most-qualified individual was senior claims adjuster Millicent Barclay.

Subsequent to Walters' decision, Plaintiff was transferred to Carr's former position. Plaintiff initially welcomed this opportunity because of the breadth of experiences associated with that position. Doyle Dep. at 45. She soon became discontent, however, and began searching for another job. Consequently, Plaintiff submitted a voluntary resignation in January, 1993. In her exit interview with Chappelle, Plaintiff stated that she resigned because she had accepted an external position. She also opined that the company was not supportive of women.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") in February, 1993. Upon the issuance of a right to sue letter, Plaintiff filed her suit under Title VII on August 23, 1994. Defendant moved for summary judgment on January 20, 1995.

## II.

■ Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. F.R.Civ.P. 56. Summary judgment is appropriate where parties do not dispute material facts that might affect the outcome of an action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under Rule 56, the movant bears the burden of proving the absence of any genuine issues of material fact, and the Court must view the facts and any justifiable and legitimate inferences drawn therefrom in the light most favorable to the non-moving party. *Id.* at 248, 255–56,

106 S.Ct. at 2508, 2513–14. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). Where no genuine issue of material fact exists, the Fourth Circuit has imposed an obligation on the trial judge "to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987).

■ Once the movant has met this burden, and a properly supported motion is before the Court, a non-moving party, who will bear the burden of proof at trial on a dispositive issue, may not rest upon mere belief or conjecture, or the allegations and denials contained in his pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rather, the non-moving party must set forth specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. *Id.*

■ Courts must take special care in considering summary judgment in cases involving questions of motive, such as in employment discrimination cases. *Ballinger v. North Carolina Agricultural Extension Service,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); *see Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364–65 (4th Cir.1985). However, " '[t]he fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is *never* an appropriate vehicle for resolution.' " *Ballinger,* 815 F.2d at 1005 (*quoting Woodworkers of America v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1272 (4th Cir.1981)) (emphasis in original). Where a plaintiff fails to set forth

either a *prima facie* case of discrimination or a "genuine factual dispute over the employer's legitimate non-discriminatory explanation," a defendant may prevail on summary judgment. *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316–17 (4th Cir.1994).

### III.

Where a plaintiff advances a disparate treatment claim by alleging discriminatory promotion or discriminatory discharge and there is a lack of direct evidence on the issue, the Fourth Circuit has adopted the three-part burden of proof test initially set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981).[1] *See e.g., Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994); *McNairn v. Sullivan,* 929 F.2d 974, 977 (4th Cir.1991). First, the plaintiff must establish a *prima facie* case. In discriminatory promotion cases, a *prima facie* case consists of the following elements:

> (1) plaintiff is a member of a protected group; (2) plaintiff applied for the position in question; (3) plaintiff was qualified for the job; and (4) plaintiff was rejected in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination.

*Carter,* 33 F.3d at 458 (citations omitted). The *prima facie* case for discriminatory discharge, on the other hand, consists of the following elements:

> (1) plaintiff is a member of a protected group; (2) plaintiff was qualified for the job and performed the job satisfactorily; (3) in spite of plaintiff's qualifications and performance, plaintiff was demoted or ultimately discharged; and (4) the position remained open to similarly qualified applicants after plaintiff's dismissal.

*Id.* (citations omitted); *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at

1093–94. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

The burden then falls upon the defendant to rebut this presumption by producing evidence that the plaintiff was not hired for a legitimate, nondiscriminatory reason. *Id.* If the defendant satisfies this burden of production, he has rebutted the presumption raised by the plaintiff's prima facie case. *Id.* at 255, 101 S.Ct. at 1094–95. Because the burden of persuasion remains on the plaintiff, the ultimate burden then falls on her to demonstrate that the reason set forth by the employer "was not the true reason for the employment decision . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095. The employer's proffered reason is not pretextual "unless it is shown both that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis added). If the plaintiff fails to evidence a genuine dispute of fact over the employer's nondiscriminatory reason, he has not satisfied his burden and the defendant may prevail as a matter of law. *Mitchell,* 12 F.3d at 1317.

### IV.

Plaintiff asserts that Defendant did not promote her because of her sex and that such alleged discrimination "forced [her] to leave her position with [D]efendant." Complaint ¶ 9. The Court need not address the merits of this discriminatory discharge claim because the Court determines that Plaintiff failed to exhaust her administrative remedies as to this portion of her complaint.

Plaintiff's failure to include allegations of discriminatory discharge in either the EEOC charge or the accompanying affidavit is mani-

---

1. Plaintiff, in her opposition brief, indicates that she seeks to apply the *McDonnell Douglas* frame- work. Plaintiff's Brief at 2.

fest.[2] A review of these documents plainly reveals that Plaintiff was immediately concerned with bringing only a failure to promote claim before the EEOC. In fact, these documents nowhere mention that Plaintiff even left Defendant's employ. Subsequent correspondence with the EEOC also reveals that Plaintiff was merely bringing before the EEOC "allegations concerning sexual discrimination in [Defendant's] promotion process." Defendant's Brief, Ex. 3 (letter dated April 1, 1993 from Plaintiff to EEOC). Likewise, in an August 23, 1993 letter to the EEOC, Plaintiff again fails to set forth a claim of discriminatory discharge or any specific facts which would support such a claim. *Id.*, Ex. 4.

 As a general principle, a plaintiff may not set forth claims in a Title VII lawsuit that were not included in her EEOC charge. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *see also Ritter v. Mount St. Mary's College*, 814 F.2d 986, 993 (4th Cir.), *cert. denied*, 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987). The rationale underlying this rule is sound:

> "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges, as surely would an initial failure to file a timely EEOC charge."

*Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989); *see also Alexander*, 415 U.S. at 44, 94 S.Ct. at 1017–18. For these reasons, a claim omitted from an EEOC charge may *only* be raised in a Title VII complaint where such claim is "reasonably related to the allegations and claims in the administrative charge or, if disclosed, the omitted claim could reasonably be expected to follow from the administrative investigation based on the deficient administrative charge." *Nicol v. Imagematrix, Inc.*, 767 F.Supp. 744, 753 (E.D.Va.1991); *see also Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981); *King v. Seaboard Coast Line Ry. Co.*, 538 F.2d 581, 583 (4th Cir.1976).

 The Court reiterates that Plaintiff's EEOC charge raised claims of promotional discrimination and *nothing* more. There were no allegations before the EEOC that she was discharged; in fact, the record reveals that Plaintiff voluntarily resigned her position after securing another employment opportunity. Moreover, there were no assertions even suggesting the Defendant engaged in conduct that would warrant a finding of constructive discharge. *See infra* note 3 (discussing constructive discharge). Any possible claim of constructive discharge would have to be gleaned from Plaintiff's August, 1993 letter to the EEOC in which she refers, in passing, to Defendant's general approach to promoting and rewarding women. Broad assertions to the EEOC suggesting general discrimination in the work environment, however, are wholly insufficient to support a Title VII constructive discharge complaint where Plaintiff's EEOC charge alleged *only* discriminatory promotion. *See Nicol*, 767 F.Supp. at 753–54 (citations omitted); *Cf. Ritter*, 814 F.2d at 993 (claim of denial of tenure in EEOC charge insufficient to support a general discrimination claims

---

2. The following particulars are set forth in the EEOC charge:

 I. I began my employment on April 25, 1988, as a Claims Representative. On or about March 1989, I was promoted to Claims Adjuster. In May 1990, I was promoted to Senior Claims Adjuster. On November 30, 1992, I was denied promotion to the position of unit manager.

 II. The reason Ray Walters, Claims Manager, gave me for denial of promotion was that the selectee had slightly more technical knowledge than me.

 III. I believe that I was denied promotion because of my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I was better qualified than the selectee based on experience, technical and administrative knowledge.

Defendant's Brief, Ex. 1. Furthermore, Plaintiff stated in the EEOC charge that the discrimination took place *only* on November 30, 1992, the date she was passed over for promotion. She does not indicate that the discrimination continued through her resignation in January, 1993. *Id.*

under ADEA in subsequent Title VII complaint). On this basis, the Court determines that the discriminatory discharge allegations raised in Plaintiff's complaint are not reasonably related to the claims and allegations contained in her EEOC charge. Nor would such a claim reasonably be expected to follow an EEOC investigation. Accordingly, summary judgment is warranted as to Plaintiff's claim of discriminatory discharge.[3]

## V.

■ As regards Plaintiff's discriminatory promotion claim, the Court assumes, without deciding, that Plaintiff has set forth a *prima facie* case of disparate treatment. Indeed, this is by no means designed to be an onerous burden. *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1090–91. Thus, a presumption of discrimination exists and the burden of production falls upon Defendant to set forth a legitimate, non-discriminatory reason for not promoting Plaintiff.

■ Defendant asserts that Plaintiff was not promoted to claims unit manager for three reasons: (1) Plaintiff's overall performance was inferior to that of Carr; (2) Plaintiff had a historically contentious relationship with management; and (3) Plaintiff had less experience than Carr with high monetary exposure files. As to performance, the record unambiguously reveals that Carr received more favorable overall evaluations than did Plaintiff. Carr, prior to his promotion, was supervised by Deborah Spurlock. Spurlock states that Carr is "without question, one of the best claims adjusters I have ever worked with or supervised in my ten-year career in claims at [Defendant]." Spurlock Aff. ¶ 2. Consequently, Carr received a performance rating of "Superior." Walters also had the opportunity, though only occasionally, to evaluate Carr's perfor-

---

**3.** The result would not differ if the Court examined Plaintiff's discriminatory discharge claim on its merits because Plaintiff has not established a *prima facie* case of discriminatory discharge. Specifically, she has not offered any proof that she was actually or constructively discharged, as required in the third element of the *prima facie* case. *See Carter,* 33 F.3d at 459.

At stated above, Plaintiff presumably premises this claim on the doctrine of constructive discharge as it is undisputed that she voluntarily resigned her position after securing another employment opportunity. The basis of any constructive discharge claim, however, is unclear as the complaint fails to set forth any fact in support of this allegation. The most evident interpretation of the complaint suggests that Plaintiff is claiming that Defendant intended to force her to resign by means of the allegedly discriminatory promotion. This position is not well taken; indeed, it is well established that "failure to promote in and of itself is not sufficient to result in a constructive discharge." *E.E.O.C. v. Federal Reserve Bank of Richmond,* 698 F.2d 633, 673 (4th Cir.), *rev'd on other grounds,* 467 U.S. 867, 873, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). This is especially true on the facts of the instant matter, where Defendant, after Carr's selection, transferred Plaintiff to Carr's position with the intention of grooming her for future management openings. Walker Aff. ¶ 11; Chappelle Aff. ¶ 15. In fact, Plaintiff testified at her deposition that she was initially excited about the transfer for that very reason. Plaintiff Dep. at 44–45.

Furthermore, an overly generous reading of the complaint suggests that Plaintiff claims she was constructively discharged because of general sex discrimination. The Fourth Circuit, however, unambiguously requires a showing of "intolerable working conditions and a deliberate effort by the employer to force the employee to quit." *Johnson v. Shalala,* 991 F.2d 126, 131 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 52, 130 L.Ed.2d 12 (1994); *accord Carter v. Ball,* 33 F.3d 450, 459 (4th Cir.1994). Deliberateness may be established by either direct evidence of the employer's intent to force the employee to resign, or by circumstantial evidence of the same, such as a "series of actions that single out a plaintiff for differential treatment." *Johnson,* 991 F.2d at 131.

Aside from the allegedly discriminatory promotion, the record is absolutely void of any evidence demonstrating either intolerable working conditions or a deliberate effort by Defendant to force her to resign. To begin, Plaintiff, at her deposition, could not point to any specific intentional conduct designed to force her to quit. Plaintiff Dep. at 87–88. Indeed, the fact that Plaintiff was afforded an attractive transfer after being denied promotion certainly undercuts any effort on her part to demonstrate such conduct. Moreover, the fact that she seeks reinstatement "belies [any] claim that intolerable conditions underlay [her] resignation." *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1256 (4th Cir.), *cert. denied* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). Her deposition testimony underscores this conclusion. When asked whether she perceived a "concerted effort on the part of [Defendant] to make [her] feel humiliated," Plaintiff replied, "No." Plaintiff Dep. at 87. Thus, summary judgment as to the constructive discharge claim is also proper on the basis that Plaintiff fails to set forth a *prima facie* case. *See Mitchell,* 12 F.3d at 1317.

mance during corporate protocols.[4] According to Walters,

> This is where Carr really excelled. He demonstrated technical competence and the ability to be creative on large and difficult files. I felt that the skills that Carr showed in the corporate protocols would make him a good manager and would serve him well in training new adjusters.

Walters Aff. ¶ 9; *see also id.*, Ex. A at 4–5 (Walters' EEOC Aff.); Spurlock Aff., Ex. A at 2 ("I would say that Carr does perhaps the best protocol in the office").

Plaintiff, however, was also considered a solid performer. Indeed, a review of her performance appraisal reveals that her supervisor in the fall of 1992, Diedre Ahern, considered her to possess "very good technical knowledge and analytical abilities" and "excellent communication skills." Chappelle Aff., Ex. B. At the same time, however, Ahern noted that Plaintiff "needs to develop her skills as backup management to further her career," and that she "should demonstrate support of management programs, policies and decisions". *Id.* Consequently, Plaintiff received an overall performance rating of "Commendable," which is lower than "Superior." *Id.* As for her performance at corporate protocols, Plaintiff had less experience in this area because she handled lower profile cases. When she *was* responsible for a presentation, she "did not show the same level of expertise" as Carr. Walters Aff., Ex. A at 7 (Walters' EEOC Aff.). For example, she was "frequently" unable to answer questions posed during the protocol and, unlike Carr, "had to thumb through the claim file to get the answers." *Id.* Plaintiff does not dispute these conclusions.

■ Thus, the undisputed record reveals that Walters and, to a lesser extent, Chappelle, considered both uncontradicted performance appraisals and protocol presentations that undeniably indicate that Carr outperformed Plaintiff.[5] In selecting an individual to fill a management position, an employer must surely need to consider all characteristics relevant to being a good manager. After all, there is little doubt that some individuals, despite impressive intellectual capacity or analytical ability, are simply not management fodder because they lack the communication and interpersonal skills required to oversee, direct and train a group of subordinate employees in their day-to-day tasks. That Defendant concluded that Carr offered the best "overall package" and selected Carr for the position on that basis is manifest. This conclusion alone is sufficient for a determination that Defendant has satisfied its burden of proof under the *McDonnell Douglas* framework; indeed, it is well settled that selection of a more highly qualified applicant is plainly a non-discriminatory reason for rejecting another applicant. *Love v. Alamance County*

---

4. Corporate protocols are formal round table discussions during which adjusters present high exposure, catastrophic injury or litigated files to management.

5. In opposing summary judgment, Plaintiff states that Carr did not perform at the high level indicated by Defendant. Along the same lines, Plaintiff asserts that Walters never reviewed her work product prior to making the promotion decision.

These arguments are not sufficient to create a legitimate and justifiable inference of discrimination. To begin, the record is void of any evidence that Walters, in contemplating the promotion, possessed any evidence whatsoever of Carr's alleged negligence in maintaining claim files. At best, Plaintiff's arguments suggest that Walters was wrong in his assessment of Carr. This does not make Walters' decision discriminatory as "[a] reason honestly described but poorly founded is not a pretext, as that term is used in

the law of discrimination." *Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir.1989) (citation omitted). Furthermore, Plaintiff's argument is premised on her subjective opinion that she was the more qualified candidate because of Carr's alleged carelessness. This argument is misguided, however, because it is not the Plaintiff's perceptions which are dispositive; rather, "[i]t is the perception of the decision maker which is relevant." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980); *see Wheeler v. Travelers Companies*, 866 F.Supp. 268, 271 (E.D.Va.1994) (plaintiff's self-perception irrelevant as proper focus is on decision maker). Finally, Plaintiff's contention that Walters allegedly never reviewed Plaintiff's work product is simply not relevant to resolving the issue currently before the Court. Nowhere is there a requirement that a decision-maker personally review the actual work product of one being considered for promotion, especially where performance appraisals have been made available for review.

*School Bd.,* 757 F.2d 1504, 1507 (4th Cir. 1985).

Defendant next asserts that Plaintiff had less involvement with high profile cases than did Carr. Defendant argues, and Plaintiff does not contest, that exposure to such cases is crucial to developing technical skills. Walters Aff. ¶ 10. Moreover, such cases broaden an adjuster's experience, thus making him a more attractive management candidate. *Id.* Defendant does not deny that Plaintiff had some experience with high exposure cases and that she handled them well. Defendant emphasizes, however, that Carr had "substantial experience handling claims with substantial monetary exposure, i.e., $50,000.00 or more" and that Plaintiff "had less experience" in handling such claims. *See* Walters Aff. ¶ 6–7; *id.,* Ex. A at 5–6 (Walters EEOC Aff.).

Plaintiff has failed to contradict these facts. Indeed, she admitted at her deposition that Carr, prior to promotion, worked "commercial accounts" that have higher limits and the potential to be "more challenging." Plaintiff Dep. at 44; *see also* Walters Aff. Ex. A at 5 (Walters EEOC Aff.) (Carr's unit involved Pennsylvania accounts which involve "commercial and higher limit[ ] personal lines"). While Plaintiff argues that Defendant has changed its rationale for not promoting her from "less technical experience" to "less experience with high volume claims," Plaintiff does not challenge Defendant's contention that technical experience and working with high dollar accounts are essentially one in the same as an individual develops technical experience by working high exposure accounts. On this basis, the Court determines that Defendant has again articulated a legitimate non-discriminatory reason for not promoting Plaintiff, and that Plaintiff has failed to demonstrate a justifiable inference that this reason was a pretext for discrimination.

Third, Defendant asserts that Plaintiff was not supportive of management policies and decisions. Specifically, Defendant states that (1) Plaintiff was observed searching for a report (to which she was apparently not privy) in a claims manager's desk and subsequently complaining, in the presence of others, about disparate work loads between units; and (2) Plaintiff, while conducting a training seminar, told the trainees that she disagreed with her manager, Diedre Ahern, as to a given approach to an issue being discussed at the seminar. Defendant's Reply Brief, Ex. 3 at 4–5 (April 30, 1993 letter to EEOC).[6] Plaintiff acknowledges that Walters was concerned about these events, and that, on Plaintiff's initiative, Walters previously discussed with her this apparent lack of support for, and criticism of, management. Plaintiff Dep. at 98–104.

Plaintiff disputes Defendant's version of these events. At the same time, however, she has not produced any evidence that Walters' consideration of these incidents and his resulting conclusion that Plaintiff was not supportive of management, while possibly misguided and misinformed, was in any way illegitimate or pretextual. The Court reiterates, "A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination." *Holder v. City of Raleigh,* 867 F.2d 823 (4th Cir. 1989) (citation omitted). Moreover, Plaintiff has not created a genuine factual issue by merely pointing to Ahern's statements to the EEOC or by denying that she rummaged through a manager's desk. As stated heretofore, Plaintiff indicated during her deposition that she was acutely aware, well before her promotion interview, that Walters was concerned about her attitude towards management. Consequently, the Court determines that Defendant has set forth another nonpretextual reason for not promoting Plaintiff.

Finally, in addition to attacking Defendant's proffered reasons for not hiring her, Plaintiff also notes a 1991 incident in which a manager by the name of Weltens allegedly told Plaintiff, after she had not been promoted to a position to which she applied in 1991, that she had to "spend more time with the boys" in order to be promoted because "the boys are the ones that make the decisions." Plaintiff Dep. at 91. Defendant does not deny that this statement was made.

6. The existence of this letter to the EEOC renders Plaintiff's argument that Defendant never submitted specifics of insubordination to the EEOC a nullity as the letter unambiguously sets forth both of these alleged instances of insubordination.

This statement is not sufficient to avoid summary judgment. To begin, Weltens was not the decision maker in the instant action. In fact, there is no evidence that he was even remotely connected with the promotional decision at issue. Moreover, a fair and legitimate assessment of Weltens' comments indicates that they were politically charged, not discriminatory. Indeed, Plaintiff understood them in this fashion. When asked to elaborate on the discussion, Plaintiff replied,

> He said it was easier for men because the men socialize together. So you have to make extra efforts being a female to be noticed. I had expressed to [Weltens] concerns about that I didn't want to get a job because I played golf with the claims manager, I wanted to get the job because I was qualified for it. He said I was being unrealistic and that it was all political and it was more difficult for women because they didn't have the socializing aspect.

Plaintiff Dep. at 92. Moreover, Plaintiff understood Weltens to make these comments out of honesty, not animus. *Id.* Finally, even if the comment was properly characterized as discriminatory, which it cannot, Plaintiff has not established any tenable "nexus" between Weltens' 1991 statement and Walters' November, 1992, decision not to promote her. *See E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 942 (4th Cir.1992). Accordingly, the Court concludes that a "fair minded jury" simply could not return a verdict for Plaintiff based on this statement. *Id.*

The Court determines that Defendant has adequately set forth three non-discriminatory reasons for not promoting Plaintiff, thus rebutting the inference of discrimination raised by the *prima facie* case. The Court determines further that Plaintiff has failed to proffer sufficient facts demonstrating that any of Defendant's stated reasons for not promoting her were a subterfuge for discrimination. Quite simply, the Court concludes, as a matter of law, that a reasonable jury could not draw a legitimate and justifiable inference that sex discrimination was the "real" factor behind Defendant's decision. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2742 (1993).

### VI.

Because Plaintiff failed to exhaust her administrative remedies on the allegations of discriminatory discharge, the Court will not consider the merits of that claim. As regards her claims of discriminatory promotion, the Court concludes that Plaintiff has failed to satisfy her burden of persuasion under the *McDonnell Douglas* framework. On this basis, the Court will enter summary judgment.

An appropriate Order shall issue.

### *ORDER*

This matter is before the Court on Defendant's motion for summary judgment. *See* F.R.Civ.P. 56. Upon due consideration, for the reasons stated in the accompanying Memorandum this date filed, and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED that Defendant's motion be and the same is hereby GRANTED.

IT IS FURTHER ORDERED that Judgment be and the same is hereby entered in favor of Defendant who stands dismissed with its taxable costs.

Let the Clerk send a copy of this Order and accompanying Memorandum to all counsel of record.