Sherry WHITE–BATTLE, Plaintiff,

v.

DEMOCRATIC PARTY OF VIRGINIA,
et al., Defendants.

No. CIV.A. 203CV897.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 29, 2004.

Sherry White–Battle, Norfolk, VA, for Plaintiff.

Stephen E. Heretick, Esquire, Portsmouth, VA, for Defendant Democratic Party of Virginia.

Robert B. Rigney, Esquire, A. Christopher Zaleski, Esquire, Protogyrou & Rigney PLC, Monticello Arcade, Norfolk, VA, for Defendant Norfolk City Democratic Committee.

S. Lawrence Dumville, Esquire, Norris & St. Clair, PC, Virginia Beach, VA, for Defendant George Schaefer.

Harold P. Juren, Esquire, Melvin Wayne Ringer, Esquire, Office of the City Attorney, Norfolk, VA, for Defendant Norfolk Electoral Board.

## ORDER

MORGAN, District Judge.

This matter is before the Court on Plaintiff Sherry White–Battle's ("Plaintiff") Motion for Preliminary Injunction (Document No. 5), Defendant Norfolk Electoral Board's Motion for Summary Judgment (Document No. 9), Defendant George Schaefer's Motion for Summary Judgment (Document No. 15), and Plaintiff's Motion for Default Judgment against the Democratic Party of Virginia (Document No. 28). On May 27, 2004, the Court heard argument on the Motions for Summary Judgment and the Motion for Default Judgment. For the reasons set forth in this Order, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction, **GRANTS** the Norfolk Electoral Board's and George Schaefer's Motions for Summary Judgment, and **DENIES** Plaintiff's Motion for Default Judgment against the Democratic Party of Virginia.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND [1]

On December 24, 2003, the Plaintiff filed a Complaint in this Court against the Democratic Party of Virginia ("the Party"), the Norfolk City Democratic Committee ("the Committee"), George Schaefer ("Schaefer"), and the Norfolk Electoral Board ("the Board"). (Document No. 1). The Plaintiff alleges that this Court has federal question jurisdiction to consider violations of her First, Fourteenth, and Fifteenth Amendment rights, as well as Sections Five and Ten of the Voting Rights Acts of 1965, 42 U.S.C. § 1973(a), (b), (c), 42 U.S.C. § 1983, and 28 U.S.C. §§ 1343, 2201, and 2202. (Compl. at ¶ 9).

This action arises out of the Plaintiff's failed attempts to become the Democratic nominee in the election for the Clerk of the Norfolk Circuit Court (hereinafter, "Clerk"). On or about May 16, 2003, the Plaintiff filed a Certification of Candidate Qualification and additional papers with the General Registrar of the City of Norfolk, in order to qualify to be included on the November 2003 ballot for Clerk. (Compl. at ¶ 11). The Plaintiff believed that the Committee would hold a caucus on May 31, 2003 to select a Clerk nominee.

---

1. The facts are stated in the light most favorable to Plaintiff, and are not factual findings for any other purpose other than a ruling upon the instant motions.

(Compl. at ¶ 13). On or about May 16, 2003, the Plaintiff learned that the Committee's nomination period ended on March 28, 2003, and as a result, the Plaintiff could not become the Committee's nominee. (Compl. at ¶¶ 15–16, 19). The Plaintiff also learned that the Committee selected Schaefer as its nominee for the Clerk's election in the November 2003 Commonwealth General Election. (Compl. at ¶¶ 16, 19). Schaefer had been an active member of the Republican Party, having previously served as the Chairman of the City of Norfolk Republican Party. (Compl. at ¶ 17). The Plaintiff contacted Barbara Klear ("Klear"), Secretary for the Committee, who told the Plaintiff that there was no publication of a notice of caucus and did not state the date or location of the caucus. (Compl. at ¶ 19).

The Plaintiff objects to the selection process used to nominate Schaefer as the Committee nominee. First, the Plaintiff alleges that Schaefer's selection violated Va.Code Ann. § 24.2–510, because nominees were not to be selected prior to May 9, 2003, exactly 32 days before the primary date of June 10, 2003. (Compl. at ¶ 37). Second, the Plaintiff alleges that the Committee's selection meeting did not comply with Section 9.1 of the Virginia Democratic Party Plan or Article IX B of the Committee's By–Laws, because the notice, if any, was not published in a newspaper of general circulation in the City of Norfolk, including the date, time, agenda, place, and address of the caucus/meeting. (Compl. at ¶ 38).

The Plaintiff also objects to the manner in which the general election was administered. (Compl. at ¶¶ 44–111). The Plaintiff alleges five (5) errors in the election administration. First, the Plaintiff alleges that the voting machines malfunctioned resulting in vote miscounting. (Compl. at ¶ 54). One of the Plaintiff's representatives witnessed the breakdown of machines at two polling locations. (Williams Aff. at ¶ 1). The Plaintiff further states that Elisa Long, the General Registrar, advised her that "they had many serious problems with the machines breaking down in the precincts that evening." (Battle Aff. at ¶ 22). Second, Plaintiff's representatives were not allowed into two polling locations during the vote count. (Compl. at ¶¶ 61, 65–66). Carolyn Whitfield was prevented from observing the vote count at the Ballentine precinct, and Jean Fulcher was prevented from observing at the Lafayette–Winona precinct. (Whitfield Aff. at ¶ 9; Fulcher Aff. at ¶ 1). Third, the Plaintiff alleges that votes cast after 4:00 p.m. on election day were not counted. (Compl. at ¶¶ 79–80). In support of this claim, the Plaintiff states that she voted at the St. Andrews precinct at 5:30 p.m.; however, the Board's certified tallies from the St. Andrews precinct do not show any votes for that time period. (Pl.'s Mem. in Opp'n to the Board's Mot. for Summ. J. (hereinafter, "SJ Opp'n Memo") at 3; Battle Aff. at ¶¶ 1–2). Fourth, the Plaintiff claims that paper ballots cast at Zion Grace precinct were not accounted for. (Compl. at ¶ 69; Battle Aff. at ¶¶ 12, 34; Edmonds Aff. at ¶ 34). Fifth, the Plaintiff asserts that certain records were not made available to her after the election (Compl. at ¶ 86). Specifically, the Plaintiff's request for tally sheets, printed return sheets, and documentation of the votes, as required by Va.Code 24.2–642, went unanswered. (Battle Aff. at ¶ 12). The Plaintiff was initially denied the opportunity to inspect the poll books for all 55 Norfolk precincts (Battle Aff. at ¶ 26); however, the Plaintiff and Luther Edmonds, one of the Plaintiff's representatives, eventually inspected the voting tallies. (Edmonds Aff. at ¶ 18). Edmonds observed that poll book information and tallies were missing from five (5) precincts. (*Id.*). Edmonds was told that there were no tallies from the five precincts because the vote totals were called

in on cellular telephones. (*Id.* at ¶ 20). Later, both the Plaintiff and Edmonds were allowed to inspect the certified tallies for these five precincts, but not the poll book information. (*Id.* at ¶ 24).

In Count I, the Plaintiff alleges violations of the Voting Rights Act of 1965 and the Fifteenth Amendment. Specifically, the Plaintiff claims that as an African–American, she has the same right to run for public office and participate in the political process as white candidates, pursuant to the Voting Rights Act of 1965. (Compl. at ¶ 113). She further claims that the Defendants' actions constitute violations of her rights under the Voting Rights Act, 42 U.S.C. § 1973(a)—(c) and the Fifteenth Amendment to the United States Constitution. (Compl. at ¶ 114). The Plaintiff claims that the Defendants' actions were racially motivated to discriminate against and to exclude African–Americans from the position of Clerk. (Compl. at ¶ 115).

In Count II, the Plaintiff alleges that as an African–American, similarly situated as Schaefer, a white individual, she was denied equal protection of the law by the Defendants because of her race. (Compl. at ¶ 118).

In Count III, the Plaintiff alleges that the Defendants have violated her right to freedom of expression and association as protected by the First and Fourteenth Amendments to the United States Constitution. (Compl. at ¶ 122).

The Plaintiff requests the following relief: (1) a declaration that the Defendants, acting jointly and severally, violated her constitutional rights as alleged; (2) an injunction prohibiting the Defendants from swearing in Schaefer to the position of Clerk; (3) a declaration that Schaefer's election as Clerk is invalid and void; and (4) an injunction ordering that a special election be held in conformity with Va. Code Ann. §§ 24.2–226, 227.

On December 30, 2003, the Court held a hearing on Plaintiff's Motion for a Temporary Restraining Order. The Court denied Plaintiff's Motion for a Temporary Restraining Order. (Document No. 3). In doing so, the Court found that all factors weighed against issuing the temporary restraining order—e.g., presence of irreparable harm, balancing of harm to the parties, public interest, and likelihood of success on the merits. (*Id.*). On January 6, 2004, in the wake of the Court's decision, the Plaintiff filed a Motion for Preliminary Injunction. (Document No. 5). On January 27, 2004, the Board filed its Motion for Summary Judgment. (Document No. 9). On February 2, 2004, Schaefer filed its Motion for Summary Judgment. (Document No. 15). Finally, on April 7, 2004, the Plaintiff filed a Motion for Default Judgment against the Party. (Document No. 28). The Court heard argument on the Motions for Summary Judgment and Motion for Default Judgment on May 27, 2004.

## II. APPLICABLE LAW

### A. PRELIMINARY INJUNCTION STANDARD

 This Court follows the four-part test of *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977) when deciding whether to grant a plaintiff's motion for preliminary injunction. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir.2002). The Court must consider: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991); *see Blackwelder*, 550 F.2d at 193–95. The Court's initial focus is on the likelihood of irreparable harm to the plain-

tiff if the preliminary injunction is denied. *Safety–Kleen, Inc. v. Wyche*, 274 F.3d 846, 859 (4th Cir.2001). Assuming that the plaintiff can make a showing of irreparable harm, the Court must then weigh the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. *Scotts Co.*, 315 F.3d at 271. If the balance of the hardships "tips decidedly in favor of the plaintiff," *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991) (internal quotation marks omitted), then generally it is enough for the plaintiff to have "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Blackwelder*, 550 F.2d at 195 (internal quotations omitted). However, if the balance of hardships is relatively equal, then "the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success." *Direx*, 952 F.2d at 808 (internal quotation marks omitted).

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the plaintiff and defendant dispute the facts of the case, "plaintiff's version of the facts must be presented where the parties' versions conflict, at least to the degree that her allegations have support in affidavits, depositions or other documentary evidence." *Magnuson v. Peak Technical Servs.*, 808 F.Supp. 500, 504 (E.D.Va. 1992) (citations omitted).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in the pleadings." *Doyle v. Sentry Ins.*, 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505.

### III. ANALYSIS

#### A. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The first motion before the Court is Plaintiff's Motion for Preliminary Injunction, filed on January 6, 2004. (Document No. 5). Although the Court did not hear argument on this motion at the May 27, 2004 hearing, Local Civil Rule 7(J)[2] of the LOCAL RULES FOR THE UNITED STATES DIS-

---

**2.** Local Civil Rule 7(J): **Determination of Motions Without Oral Hearing**: In accordance with FED. R. CIV. P. 78, the Court may rule upon motions without an oral hearing.

TRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA provides that the Court may rule upon motions without a hearing.

█ The Plaintiff filed her Motion for Preliminary Injunction on January 6, 2004, requesting that the Court "enter an Order enjoining the defendants, in particular, the Norfolk Electoral Board from swearing in Schaefer or having Schaefer become the Clerk of the Circuit Court of the City of Norfolk until this case has been decided on the merits." (Mot. for Prelim. Inj. at ¶ 4). In support of her position, the Plaintiff recites that she has no adequate remedy at law, the likelihood of harm to the defendants is minimal, she has a good likelihood of success on the merits, and the public interest will be enhanced by issuing the preliminary injunction. (*Id.* at ¶¶ 3, 5–6, 8).

The Plaintiff's Motion for Preliminary Injunction offers no evidence or support for the Plaintiff's position beyond that presented at the December 30, 2003 TRO hearing. In that hearing, the Court focused on the *Blackwelder* factors and asked the Plaintiff to identify the irreparable harm she would incur in the absence of issuing a TRO. (Tr. of Dec. 30, 2003 Hr'g at 28–30). Most importantly, the Plaintiff was unable to identify any irreparable harm she would incur if the Court failed to issue the TRO. Additionally, the Court found that the remaining factors—the harm to the defendant if the relief was granted, the public interest, and the Plaintiff's likelihood of success on the merits—also weighed against issuing the TRO. Because the Plaintiff has failed to offer any new evidence on these factors, the Court **DENIES** the Plaintiff's Motion for Preliminary Injunction.

## B. THE BOARD'S MOTION FOR SUMMARY JUDGMENT

The next motion before the Court is the Board's Motion for Summary Judgment.

The Plaintiff makes the following claims against the Board: (1) Count I—Violations of the Voting Rights Act of 1965 and the Fifteenth Amendment; (2) Count II—Violations of the Equal Protection Clause of the Fourteenth Amendment; and (3) Count III—Violations of the Plaintiff's Freedom of Expression and Association, Pursuant to the First and Fourteenth Amendments.

### 1. VOTING RIGHTS ACT OF 1965

In Count I of the Complaint, the Plaintiff alleges that the Party, Committee, and Schaefer, jointly and severally, acted to violate the Plaintiff's rights under the Voting Rights Act, 42 U.S.C. § 1973 and the Fifteenth Amendment of the Constitution. Out of an abundance of caution, the Board addressed this claim in its Motion for Summary Judgment despite the Plaintiff's failure to allege the Board's involvement in Count I.

The Board simply argues that the Plaintiff lacks standing, as an unsuccessful candidate, to sue under the Voting Rights Act. The Plaintiff's claim as stated in Count I and her own admissions at the TRO hearing on December 30, 2003 suggest that the Plaintiff brings this action as an unsuccessful candidate, not a voter. Thus, the Board contends that summary judgment is proper as to Count I.

█ It is well-settled that unsuccessful candidates lack standing to sue under the Voting Rights Act of 1965. *See Roberts v. Wamser,* 883 F.2d 617, 621 (8th Cir.1989); *see also McGee v. City of Warrensville Heights,* 16 F.Supp.2d 837, 845–46 (N.D.Ohio 1998). In *Roberts,* an unsuccessful black candidate for the Democratic primary election for the office of President of the Board of Aldermen, filed suit against the Board of Election Commissioners under the Voting Rights Act, challenging certain practices. *Id.* at 618. The

Circuit Court held that the plaintiff, as an unsuccessful candidate, did not have standing to sue under the Voting Rights Act. It said:

> We conclude that an unsuccessful candidate attempting to challenge election results does not have standing under the Voting Rights Act. Although the "aggrieved person" language might be stretched to include an unsuccessful candidate such as Roberts, we are unconvinced that Congress intended it to be stretched that far. The purpose of the Voting Rights Act is to protect minority voters, not to give unsuccessful candidates for state or local office a federal forum in which to challenge elections.

*Id.* at 621. The Eighth Circuit gave two reasons for its conclusion. First, it noted the divergence between the interests of an unsuccessful candidate and citizens trying to enforce their right to vote. *Id.* Second, the Circuit Court reasoned that Congress could not have provided standing for a defeated candidate through the Voting Rights Act, because to do so would allow federal courts to interfere with state and local elections, thus violating principles of federalism. *Id.*

In response to the Board's argument, the Plaintiff attempts to characterize her position as that of both an unsuccessful candidate and a voter. Moreover, the Plaintiff attempts to distinguish *Roberts* from the case at bar by noting that *Roberts* involved a claim under Section 2 of the Voting Rights Act. The Plaintiff contends that her Voting Rights Act claim is based on Section 5, which requires the Attorney General's preclearance of voting qualifications, practices, and procedures.

■ The Plaintiff's position is untenable. Despite her argument to the contrary, the Defendant asserts her claim under the Voting Rights Act as an unsuccessful candidate, not a voter. At the TRO hearing on December 30, 2003, the Court directly asked the Defendant, "Are you bringing the action as a voter or as a candidate?" to which the Plaintiff responded, "The candidate." (Tr. of December 30, 2003 Hr'g at 18). Moreover, the Court **FINDS** that the Complaint contains allegations that Plaintiff's suit is brought as an unsuccessful candidate. In Paragraph 40 of the Complaint, the Plaintiff alleges, "[The Plaintiff] has standing to bring this action, because she is a victim of race discrimination, *an unsuccessful candidate in the election* which was held on November 4, 2003 ...." (Compl. at ¶ 40) (emphasis added). This is consistent with the Plaintiff's allegations in Count I of the Complaint. It states, "Battle has a constitutional protective right, *as a candidate for public office,* to participate in the political process and to have equal opportunity *to run for public office as white candidates* under the Voting Rights Act of 1965, as amended." (Compl. at ¶ 113) (emphasis added). The Plaintiff further alleges, "The actions and conduct of these defendants, as alleged herein, were racially motivated to discriminate against and *to exclude African–Americans from the position of Clerk of the Norfolk Circuit Court.*" (Compl. at ¶ 115) (emphasis added). Plaintiff's belated attempt to recast her Complaint as that of a voter appears to be a recent fabrication designed to avoid prior court rulings. Based on the Plaintiff's own admission to the Court and her initial pleading, the Court **FINDS** that the Plaintiff makes her claim as an unsuccessful candidate not a voter.

■ Moreover, the Plaintiff's attempt to characterize her Voting Rights Act claim as one pursuant to the preclearance requirements of Section 5 also fails. In order for the Plaintiff to state a claim under Section 5, she would have to allege that "a state requirement is covered by § 5, but

has not been subjected to the required federal scrutiny" of preclearance. *Allen v. State Bd. of Elections,* 393 U.S. 544, 561, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). As explained in *Lake v. State Bd. of Elections of N.C.*:

> In determining § 5 issues, a court must consider: (1) whether there was an enactment or administration; (2) of a "voting qualification or perquisite to voting or standard, practice or procedure with respect to voting" that is different from pre–1964 or the most recently precleared law; and (3) "whether the challenged alteration has the potential for discrimination."

798 F.Supp. 1199, 1205 (M.D.N.C.1992) (internal citations omitted). In *Lake,* the Court held that the a court order extending voting hours on election day because of election irregularities was not a "change" in state requirements that required preclearance under Section 5. *Id.* at 1205–06. In the case at bar, the Plaintiff neatly characterized the nature of her claims as follows:

> The gravamen of Battle (sic) claims against the Board in Count I, II and III is that the Board knowingly accepted certification fro (sic) the Committee that Schaefer was the nominee of the Committee before May 9, 2003; it knowingly did not properly test the voting machines, so that they could show at all times during the election how many person (sic) have voted; and it did not count all of the hand ballots handed out at Zion Grace.

(Pl.'s Mem. in Opp'n. at 15). None of the Plaintiff's three complaints involved a "change" in state laws, standards, or procedures. To the contrary, all of the Plaintiff's complaints involve alleged actions or omissions taken pursuant to pre-established laws and procedures. For this reason, the Court **FINDS** that the Plaintiff has not alleged a claim under Section 5 of the Voting Rights Act. For the reasons discussed in this section, the Court **GRANTS** the Board's Motion for Summary Judgment as to Count I.

**2. CONSTITUTIONAL CLAIMS—EQUAL PROTECTION, FREEDOM OF EXPRESSION AND ASSOCIATION**

■ In Counts II and III, the Plaintiff alleges constitutional violations of equal protection under the Fourteenth Amendment (Count II) and violations of her freedom of expression and association under the First and Fourteenth Amendments (Count III). The Plaintiff's claims are grounded on the following factual allegations: (1) the voting machines malfunctioned; (2) Plaintiff's representatives were not allowed into two polling locations during the vote counting; (3) votes cast after 4:00 p.m. were not counted; (4) paper ballots cast at the Zion Grace precinct were not accounted for; and (5) polling records were not made available to the Plaintiff after the election. Even assuming that the Plaintiff's allegations are true, this Court will not entertain such claims in the absence of instances of "patent and fundamental unfairness" that "erode[ ] the democratic process." *Hutchinson v. Miller,* 797 F.2d 1279 (4th Cir.1986) (quoting *Hendon v. North Carolina State Bd. of Elections,* 710 F.2d 177, 182 (4th Cir.1983)).

■ Federal district courts are courts of limited jurisdiction. While this Court generally has original jurisdiction over all civil actions arising under the Constitution of the United States, *see* 28 U.S.C. § 1331, principles of separation of powers and federalism prevent the Court from reexamining election results. *Hutchinson,* 797 F.2d at 1286. In making this decision, the Court finds persuasive the Fourth Circuit's decision in *Hutchinson.* In *Hutchinson,* the Fourth Circuit considered the appeal of unsuccessful candidates for public office who challenged the outcome of a

general election based on alleged election irregularities. 797 F.2d at 1279. The plaintiffs in *Hutchinson* alleged that "the election night totals were pre-determined by defendants, who then conspired to cover up their activities." *Id.* at 1280. The plaintiffs also alleged that "numerous irregularities occurred after the election, including improper handling of the ballots and release of exact returns prior to the canvass, and destruction of ballots that violated [state law]." *Id.* at 1281. The Fourth Circuit characterized the plaintiffs' constitutional claims as having been deprived of their right to candidacy. *Id.* at 1282.

At the outset, the *Hutchinson* court recognized "the significant duty of federal courts to preserve constitutional rights in the electoral process," but limited that responsibility to "the general application of laws and procedures, not the particulars of election disputes." *Id.* at 1283. Examples of subjects of federal court intervention are class-based restrictions on the right to vote, dilution of votes through malapportionment, and enforcing the Voting Rights Act to ensure equal voting rights regardless of race. *Id.* However, " 'circuit courts have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities.' " *Id.* (quoting *Griffin v. Burns,* 570 F.2d 1065, 1076 (1st Cir.1978)). The Fourth Circuit further recognized that the "courts, mainly considering disputes involving state elections, have declined to interfere because of the constitutional recognition that states are primarily responsible for their own elections, and that alternative remedies are adequate to guarantee the integrity of the democratic process." *Hutchinson,* 797 F.2d at 1283 (internal quotations omitted).

"[T]he constitution anticipates that the electoral process is to be largely controlled by the states and reviewed by the legislature." *Id.* Moreover, the *Hutchinson* court decided to refrain from considering the particulars of a disputed election, reasoning:

To do otherwise would be to intrude on the role of the states and the Congress, to raise the possibility of inconsistent judgments concerning elections, to erode the finality of results, to give candidates incentives to bypass the procedures already established, to involve federal courts in the details of state-run elections, and to constitute the jury as well as the electorate as an arbiter of political outcomes.

*Id.* at 1285. The Fourth Circuit worried that it was not a jury's proper responsibility to review the outcome of an election, or for a court to sit in review of a jury's determination. *Id.* at 1286. The *Hutchinson* court conceded that elections are not free from error, but also held that the federal courts are not the place to remedy those potential errors. The court stated:

We further believe that federal courts are ill-equipped to monitor the details of elections and resolve factual disputes born of the political process. As one court has noted, "were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, election cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." *Powell v. Power,* 436 F.2d 84, 86 (2d Cir.1970). Elections are, regrettably, not always free from error. Voting machines malfunction, registrars fail to follow instructions, absentee ballots are improperly administered, poll workers become over-zealous, and defeated candidates are, perhaps understandably, inclined to view these multifarious opportunities for human error in a less than charitable light. Quite apart

from the serious problems of federalism and separation of powers problems raised by these tasks, we find sifting the minutiae of post-election accusations better suited to the factual review at the administrative and legislative level, where an awareness of the vagaries of politics informs the judgment of those called upon to review the irregularities that are inevitable in elections staffed largely by volunteers. *See Hennings v. Grafton*, 523 F.2d 861, 865 (7th Cir. 1975). To ask a jury to undertake such tasks, moreover, is to risk the intrusion of political partisanship into the courtroom, where it has no place.

*Hutchinson*, 797 F.2d at 1286–87.

 The Court agrees with the decision in *Hutchinson* and the underlying policies. The policy of federalism is especially persuasive in this case, in which the Plaintiff sought the position of Clerk of the Circuit Court of the City of Norfolk. Virginia law provides unsuccessful political candidates a mechanism to contest election results. *See* Va.Code Ann. § 24.2–806 *et seq.* Section 24.2–806 grants jurisdiction over an election contest to "the circuit court of the county or city in which the challenged candidate resides." Va.Code Ann. § 24.2–806. Virginia law allows an unsuccessful candidate to contest the election outcome based on "objections to the conduct or results of the election accompanied by specific allegations which, if proven true, would have a probable impact on the outcome of the election." Va.Code Ann. § 24.2–807. In the case at bar, the Plaintiff's remedy is to contest the election in the Circuit Court for the City of Norfolk. It appears from the Plaintiff's Complaint that she attempted to file some type of civil action in the Circuit Court, but it is unclear whether it was a formal contest of the election. (Compl. at ¶¶ 107–110). Like the *Hutchinson* court, this Court believes that the state circuit court, not the federal district court, is the proper court in

which unsuccessful candidates should pursue election contests, absent "instances of patent unfairness that erode[ ] the democratic process." *See Hutchinson*, 797 F.2d at 1283–84, 1287 (internal citations omitted). In the case at bar, there is no evidence that the alleged election errors, if true, are anything more than "the irregularities that are inevitable in elections staffed largely by volunteers." *Id.* at 1287. Accordingly, the Court **GRANTS** the Board's Motion for Summary Judgment on Counts II and III.

### C. Schaefer's Motion for Summary Judgment

The next motion before the Court is Schaefer's Motion for Summary Judgment. The Plaintiff makes the following claims against Schaefer: (1) Count I—Violations of the Voting Rights Act of 1965 and the Fifteenth Amendment; (2) Count II—Violations of the Equal Protection Clause of the Fourteenth Amendment; and (3) Count III—Violations of the Plaintiff's Freedom of Expression and Association, Pursuant to the First and Fourteenth Amendments.

#### 1. Voting Rights Act of 1965

With respect to the Plaintiff's claim under the Voting Rights Act of 1965, Schaefer makes the same argument as the Board that the Plaintiff has no standing, as an unsuccessful candidate, under the Voting Rights Act of 1965. For the reasons discussed in Section III(B)(1), *supra*, the Court **FINDS** that the Plaintiff makes her claim as an unsuccessful candidate not a voter, and **GRANTS** Schaefer's Motion for Summary Judgment on Count I.

#### 2. Constitutional Violations Pursuant to 42 U.S.C. § 1983

In Counts II and III of the Complaint, the Plaintiff alleges constitutional viola-

tions of her rights under the First and Fourteenth Amendments. In Count II, the Plaintiff alleges that she was "denied equal protection of the law by the defendants because of her race." (Compl. at ¶ 118). In Count III, she alleges that the defendants' actions violate her right to freedom of expression and association, as provided by the First and Fourteenth Amendments. (Compl. at ¶¶ 122–123). Title 42, United States Code, Section 1983 allows individuals to bring a civil action against persons who deprive others of the rights, privileges, or immunities secured by the Constitution and laws. It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

Schaefer contends that he cannot be liable for the alleged constitutional violations in Counts II and III because: (1) he was not acting under the color of state law; and (2) the Plaintiff fails to state facts to support any claim that Schaefer acted to deprive her of any right to secured by the laws and/or Constitution of the United States.

In response to Schaefer's Motion for Summary Judgment, the Plaintiff's at-tempts to link Schaefer to the allegedly wrongful acts of the Committee through a theory of conspiracy. The Plaintiff's theory requires the Court to accept the following three propositions: (1) the Committee and its officials are an arm of the State, and therefore, act under the color of law, *see Morse v. Republican Party of Virginia,* 517 U.S. 186, 197, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996); (2) Schaefer is part of a conspiracy with two Committee officials, Christopher and Klear, who acted to deny her equal protection and freedom of speech and association; and (3) once the conspiracy is established, a private individual can be held "under the color of law" when state officials are part of the conspiracy, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 155, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

 Even assuming, without deciding, that the Committee is an arm of the State acting under the color of law, the Plaintiff's claims in Counts II and III fail because the Plaintiff failed to allege facts supporting Schaefer's involvement in a conspiracy with Committee members and because Schaefer was not acting under the color of law at the time of the alleged events. First, the Plaintiff failed to allege any facts supporting her contention that Schaefer conspired with Christopher and Klear to violate the Plaintiff's constitutional rights.[3] Instead, the Plaintiff claims that the Committee failed to follow its own procedures and the Virginia Democratic Party Plan for providing notice and timing of the candidate selection process.

---

**3.** Out of an abundance of caution, Schaefer argued in his Brief in Support of Motion for Summary Judgment that the Plaintiff failed to make a conspiracy claim against him. *See* Document No. 17, Schaefer's Br. in Supp. of Mot. for Summ. J. at 5–7. In fact, none of the Plaintiff's counts in the Complaint refer to conspiracy. The Plaintiff's only references to a conspiracy between Schaefer and members of the Committee are found in Paragraphs 30 and 36 of the Complaint. In those paragraphs, the Plaintiff alleges that she filed a criminal complaint alleging conspiracy to violate the Plaintiff's rights under Va.Code Ann. § 24.2–1015, pursuant to Va.Code Ann. § 24.2–1001, and that she accused Schaefer and committee members of conspiring "to steal the Democratic nomination."

(Compl.¶¶ 15–16, 19, 20, 23, 25–26, 29). Moreover, the Plaintiff alleges that the Committee's selection of Schaefer preceded the date prescribed by Va.Code Ann. § 24.2–510. (Compl. at ¶ 37). The only action Schaefer is alleged to have taken is his acceptance of the Democratic nomination for Clerk. (Compl. at ¶¶ 16, 19). The Court **FINDS** that the Plaintiff has failed to allege facts sufficient to link Schaefer to any conspiracy alleged against the Committee, Party, or individual members Christopher or Klear.

■ Counts II and III also fail against Schaefer because he was not acting under the color of law at the time of the alleged events. During the time in question, Schaefer served as a Chief Deputy in the office of the Commonwealth's Attorney for the City of Norfolk, Virginia. (Schaefer Aff. at ¶ 2). Despite Schaefer's position within the local government, his alleged actions underlying the Plaintiff's claims did not involve his position as Chief Deputy. Schaefer's acceptance of the Democratic nomination for Clerk was taken in his private capacity. Even so, the Supreme Court has recognized four circumstances when a private party may be deemed a state actor for purposes of § 1983 liability:

(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*Mentavlos v. Anderson,* 249 F.3d 301, 313 (4th Cir.2001) (quoting *Andrews v. Federal Home Loan Bank,* 998 F.2d 214, 217 (4th Cir.1993)). In the case at bar, Schaefer's alleged relationship with the Committee and its members does not fit into any of the recognized exceptions when a private party may be deemed a state actor for purposes of § 1983 liability. Accordingly, the Court **FINDS** that Schaefer was not acting under the color of law. Schaefer's Motion for Summary Judgment on Counts II and III is **GRANTED**.

**D. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

■ The final motion before the Court is Plaintiff's Motion for Default Judgment against the Party. (Document No. 28). The Plaintiff argues that her service on the Party was proper pursuant to FED. R. CIV. P. 4(h)(1), which governs service on unincorporated associations. Rule 4(h)(1) states that service is proper under the service rules of the state in which the action lies, or:

by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

FED. R. CIV. P. 4(h)(1). The Plaintiff contends that her service of the Summons and Complaint upon Christopher, an officer and member of the Party's Central and State Steering Committees, was sufficient service pursuant to Va.Code Ann. § 8.01–305, which provides that process against an unincorporated association may be served on any officer, trustee, director, staff member or other agent. In response, the Party contends that Christopher is not a proper agent for service, and states that at the time of filing its Response in Opposition, it had not received a copy of the Plaintiff's Complaint. At the hearing on this motion, counsel for the Party reiterated that he had yet to see a copy of the Complaint. Based on the Party's repre-

sentations to the Court that the Party had not seen a copy of the Complaint prior to the hearing, the Court DENIES Plaintiff's Motion for Default Judgment.

## IV. CONCLUSION

The Court **DENIES** Plaintiff's Motion for Preliminary Injunction. The Court **GRANTS** the Board's Motion for Summary Judgment on all claims. The Court **GRANTS** Schaefer's Motion for Summary Judgment on all claims. The Court **DENIES** Plaintiff's Motion for Default Judgment against the Party. At the hearing on May 27, 2004, the Court ordered the Party to answer the Plaintiff's Complaint within eleven (11) days, as well as to file any motions from the Committee within eleven (11) days. Certain pleadings have since been filed, though arguably not in a timely manner.

The Clerk is **REQUESTED** to mail a copy of this Order to the Plaintiff and all counsel of record.

It is so **ORDERED**.